UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| Jason Patzfahl, <br><br> On behalf of himself and those similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> FSMZA, LLC, d/b/a Toppers Pizza; Garett Burns; Doe Corporation 1-10; John Doe 1-10 <br><br> Defendants. | Case No. <br><br> Judge <br><br> Jury Demand Endorsed Hereon |

CLASS AND COLLECTIVE ACTION COMPLAINT

1. Jason Patzfahl, on behalf of himself and similarly-situated individuals, brings this action against Defendants FSMZA, LLC d/b/a Toppers Pizza, and Garett Burns ("Defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq. and Wisconsin wage and hour laws.

2. Defendants operate four Toppers Pizza locations in Wisconsin ("Defendants' Toppers Pizza stores").

3. Plaintiff seeks to represent the delivery drivers who have worked at the Defendants' Toppers Pizza stores.

1

4. Defendants repeatedly and willfully violated the Fair Labor Standards Act and Wisconsin wage and hour laws by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wages for all hours worked.

5. All delivery drivers at the Defendants' Toppers Pizza stores, including Plaintiff, have been subject to the same or similar employment policies and practices.

## Jurisdiction and Venue

6. Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

7. Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's Wisconsin law claims.

8. Venue in this Court is proper under 28 U.S.C. § 1391(b) because Defendants reside in this district, and a substantial part of the events giving rise to the claim herein occurred in this district.

## Parties

Plaintiff

Jason Patzfahl

9. Plaintiff Jason Patzfahl is a resident of Wisconsin.

10. Plaintiff was an "employee" of all of the Defendants as defined in the FLSA and Wisconsin wage and hour laws.

11. Plaintiff has given written consent to join this action.

Defendants

FSM ZA, LLC

12. Defendant FSM ZA, LLC is a limited liability company authorized to do business under the laws of Wisconsin.

13. FSM ZA, LLC is an entity that operates the Defendants' Toppers Pizza stores.

14. Upon information and belief, FSM ZA, LLC owns four Toppers Pizza stores in Wisconsin.

15. FSM ZA, LLC has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

16. FSM ZA, LLC has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

17. At all relevant times, FSM ZA, LLC maintains control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

18. FSM ZA, LLC is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA and Wisconsin wage and hour laws.

19. At all relevant times, FSM ZA, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

20. FSM ZA, LLC's gross revenue exceeds $500,000 per year.

**Garett Burns**

21. Garett Burns is the owner and CEO of FSM ZA, LLC.

22. Garett Burns is the owner and CEO of Defendants' Toppers Pizza stores.

23. Garett Burns is individually liable to Defendants' delivery drivers under the definition of "employer" set forth in the FLSA and Wisconsin law because he owns and operates the Defendants'

3

Case 2:20-cv-01202-LA   Filed 08/06/20   Page 3 of 20   Document 1

Toppers Pizza stores, serves as manager of the Defendant entities, ultimately controls significant aspects of the Defendants' Toppers Pizza stores' day-to-day functions, and ultimately has control over compensation and reimbursement of employees. 29 U.S.C. § 203(d).

24. At all relevant times, by virtue of his role as owner and CEO of the Defendants' Toppers Pizza Stores, Garett Burns has a role in significant aspects of the Defendants' Toppers Pizza stores' day-to-day operations.

25. At all relevant times, by virtue of his role as owner and CEO of the Defendants' Toppers Pizza Stores, Garett Burns has had control over the Defendants' Toppers Pizza stores' pay policies.

26. At all relevant times, by virtue of his role as owner and CEO of the Defendants' Toppers Pizza Stores, Garett Burns has had power over personnel and payroll decisions at Defendants' Toppers Pizza stores, including but not limited to influence of delivery driver pay.

27. At all relevant times, by virtue of his role as owner and CEO of the Defendants' Toppers Pizza Stores, Garett Burns has had the power to hire, fire, and discipline employees, including delivery drivers at Defendants' Toppers Pizza stores.

28. At all relevant times, by virtue of his role as owner and CEO of the Defendants' Toppers Pizza Stores, Garett Burns has had the power to stop any illegal pay practices that harmed delivery drivers at Defendants' Toppers Pizza stores.

29. At all relevant times, by virtue of his role as owner and CEO of the Defendants' Toppers Pizza Stores, Garett Burns has had the power to transfer the assets and liabilities of Defendants' Toppers Pizza stores.

30. At all relevant times, by virtue of his role as owner and CEO of the Defendants' Toppers Pizza Stores, Garett Burns has had the power to declare bankruptcy on behalf of the Defendant's Toppers Pizza Stores.

31. At all relevant times, by virtue of his role as owner and CEO of the Defendants' Toppers Pizza Stores, Garett Burns has had the power to enter into contracts on behalf of each of Defendants' Toppers Pizza stores.

32. At all relevant times, by virtue of his role as owner and CEO of the Defendants' Toppers Pizza Stores, Garett Burns has had the power to close, shut down, and/or sell each of Defendants' Toppers Pizza stores.

33. At all relevant times, by virtue of his role as owner and CEO of the Defendants' Toppers Pizza Stores, Garett Burns had authority over the overall direction of each of Defendants' Toppers Pizza stores and was ultimately responsible for their operations.

34. Defendants' Toppers Pizza stores function for Garett Burns's profit.

35. Garett Burns has influence over how the Defendants' Toppers Pizza stores can run more profitably and efficiently.

Doe Corporation 1-10

36. Upon information and belief, Defendants own, operate, and control other entities and/or limited liability companies that also comprise part of the Defendants' Toppers Pizza Stores, and qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Toppers Pizza Stores as that term is defined by the FLSA and Wisconsin wage and hour laws.

37. Upon information and belief, Garett Burns owns and/or operates, in whole or in part, a number of other entities that make up part of the Defendants' operation.

38. Upon information and belief, the franchisor, Toppers Pizza, may also be liable as an employer of the delivery drivers employed at Defendants' Toppers Pizza Stores.

39. The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

John Doe 1-10

40. Upon information and belief, there are additional individuals who also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Toppers Pizza Stores as that term is defined by the FLSA and Wisconsin wage and hour laws.

41. Upon information and belief, Garett Burns has entered into co-owner relationships with a number of his managers and business partners, and those individuals might also qualify as "employers" of Plaintiff and the delivery drivers at the Defendants' Toppers Pizza Stores as that term is defined by the FLSA and Wisconsin wage and hour laws.

42. The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

## FACTS

### Class-wide Factual Allegations

43. During all relevant times, Defendants have operated the Defendants' Toppers Pizza stores.

44. Plaintiff and the similarly situated persons Plaintiff seeks to represent are current and former delivery drivers at the Defendants' Toppers Pizza stores.

45. All delivery drivers employed at the Defendants' Toppers Pizza stores over the last three years have had essentially the same job duties.

46. When there are no deliveries to make, Defendants' delivery drivers are required to work inside the Defendants' Toppers Pizza stores folding boxes, doing dishes, stocking coolers, mopping and sweeping the floor, taking the trash out, preparing food, and completing other duties inside the restaurant as necessary.

47. Plaintiff and similarly situated delivery drivers have been paid minimum wage minus a tip credit for the hours they worked for Defendants' Toppers Pizza stores.

48. Defendants require delivery drivers at Defendants' Toppers Pizza stores to provide cars to use while completing deliveries for Defendants.

49. Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

50. Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing charges, licensing and registration costs, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

51. Pursuant to such requirements, Plaintiff and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, financing, licensing, and registration charges, and incur cell phone and data charges all for the primary benefit of Defendants.

52. Plaintiff and similarly situated delivery drivers receive a per-mile reimbursement payment that is less than the IRS standard business mileage rate.

53. Defendants' reimbursement payments had no connection to the actual expenses incurred by the delivery drivers.

7

54. The Defendants' Toppers Pizza stores do not track or record the delivery drivers' actual expenses.

55. The Defendants' Toppers Pizza stores do not collect receipts from their delivery drivers related to the automobile expenses they incur.

56. The Defendants' Toppers Pizza stores do not collect receipts of delivery drivers' gasoline purchases during weeks when the delivery drivers worked for Defendants.

57. The Defendants' Toppers Pizza stores do not collect receipts of delivery drivers' automobile maintenance, repair, and parts purchased or paid for during weeks when the delivery drivers worked for Defendants.

58. The Defendants' Toppers Pizza stores do not collect receipts of delivery drivers' monthly or annual automobile insurance costs.

59. The Defendants' Toppers Pizza stores do not collect receipts of delivery drivers' automobile registration costs.

60. The Defendants' Toppers Pizza stores do not collect receipts of delivery drivers' automobile financing or purchase costs.

61. The Defendants' Toppers Pizza stores do not collect any other receipts from delivery drivers related to the automobile expenses they incur as delivery drivers at the Defendants' Toppers Pizza stores.

62. The Defendants' Toppers Pizza stores do not reimburse their delivery drivers for the actual expenses delivery drivers incur.

63. The Defendants' Toppers Pizza stores do not reimburse their delivery drivers at the IRS standard business mileage rate.

8

Case 2:20-cv-01202-LA   Filed 08/06/20   Page 8 of 20   Document 1

64. The Defendants' Toppers Pizza stores do not reasonably approximate the delivery drivers' expenses.

65. The Defendants' Toppers Pizza stores' reimbursement payments result in reimbursements that are less than the IRS standard business mileage rate for each mile driven.

66. According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

   a. 2017: 53.5 cents/mile
   b. 2018: 54.5 cents/mile
   c. 2019: 58 cents/mile
   d. 2020: 57.5 cents/mile

67. The delivery drivers at the Defendants' Toppers Pizza stores have incurred even more in expenses than those contemplated by the IRS standard business mileage rate—e.g., cell phone and data charges.

68. As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA and Wisconsin law.

69. Defendants have applied the same or similar pay policies, practices, and procedures to all delivery drivers at the Defendants' Toppers Pizza stores.

70. Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. See 29 C.F.R. § 531.35.

71. Defendants have failed to properly take a tip credit from Plaintiffs' wages and the wages of similarly situated employees because, after accounting for unreimbursed expenses, Defendants have paid delivery drivers a lower wage rate than they informed the delivery drivers they would be paid.

72. Defendants have also failed to properly inform Plaintiff and similarly situated delivery drivers of the requirements for taking a tip credit. 29 C.F.R. § 531.59.

73. Defendants have also failed to have Plaintiff sign a tip declaration each pay period. Wisc. Admin Code § DWD 272.03(2)(b).

74. Defendants have willfully failed to pay federal and Wisconsin state minimum wage to Plaintiff and similarly situated delivery drivers at the Defendants' Toppers Pizza stores.

## Plaintiff's Individual Factual Allegations

75. Plaintiff worked at the Toppers Pizza store in Franklin, Wisconsin from October 2019 to July 2020.

76. Plaintiff was paid minimum wage minus a tip credit for all hours worked.

77. When Plaintiff was not delivering food, he worked inside the restaurant. His work inside the restaurant included doing dishes, cleaning, folding boxes, stocking the cooler, answering phones, preparing food, taking the trash out and completing other duties inside the restaurant as necessary.

78. Plaintiff was paid slightly above minimum wage for the hours he works inside the store.

79. Plaintiff was required to use his own car to deliver pizzas.

80. From October 2019 through the end of 2019 Plaintiff was reimbursed $1.00 per delivery.

81. From the end of 2019 to July 2020, Plaintiff was reimbursed $2.00 per delivery.

82. Plaintiff regularly drove between 6-7 miles per round trip delivery.

83. As a result, Defendants' reimbursement policy resulted in Plaintiff receiving approximately between $.14 to $.17 per mile, on average from October 2019 to the end of 2019.

84. As a result, Defendants' reimbursement policy resulted in Plaintiff receiving approximately between $.28 to $.33 per mile, on average from the end of 2019 to July 2020.

85. Plaintiff was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

86. Plaintiff was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone service, GPS service, automobile financing, licensing and registration costs, and other equipment necessary for delivery drivers to complete their job duties.

87. Plaintiff has purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, licensing and registration costs, and incurred cell phone and data charges all for the primary benefit of Defendants.

88. Defendants did not track the actual expenses incurred by Plaintiff.

89. Defendants did not ask Plaintiff to provide receipts of the expenses he incurred while delivering pizzas for Defendants.

90. Defendants did not reimburse Plaintiff based on his actual delivery-related expenses.

91. Plaintiff was not reimbursed at the IRS standard mileage rate for the miles he drives while completing deliveries.

92. Defendants did not reimburse Plaintiff based on a reasonable approximation of his expenses.

93. Plaintiff regularly made approximately 3 deliveries per hour during the hours he worked as a delivery driver.

94. Plaintiff regularly drove between 6-7 miles per round trip delivery.

95. In 2019, for example, the IRS business mileage reimbursement was $.58 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Using the IRS rate as the proper measure of Plaintiff's automobile expenses, every mile driven on the job decreased his net wages by approximately $.41 ($.58 - $.17) per mile. Considering Plaintiff's estimate of about 7 miles per delivery, Defendants under-reimbursed him about $2.87 per delivery ($.41 x 7 average miles).

96. Defendants failed to properly take a tip credit from Plaintiff's wages because, after accounting for unreimbursed expenses, Defendants had taken more of a tip credit than they informed Plaintiff they would be taking.

97. Defendants failed to require Plaintiff to sign a tip declaration each pay period showing on Defendants' payroll records that when adding the tips received to the wages paid by Defendants, Plaintiff received no less than the minimum wage.

98. Defendants failed to pay Plaintiff minimum wage as required by law.

## Collective Action Allegations

99. Plaintiff brings the First Count on behalf of himself and

All similarly situated current and former delivery drivers employed at the Defendants' Toppers Pizza stores owned, operated, and controlled by Defendants nationwide, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

100. At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to

Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiff's claims are essentially the same as those of the FLSA Collective.

101. Defendants' unlawful conduct is pursuant to a company policy or practice.

102. Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and to fully reimburse for "tools of the trade."

103. Defendants are aware or should have been aware that they are not permitted to pay employees a tipped wage rate for hours worked in a non-tipped capacity.

104. Defendants are aware or should have been aware that they were obligated to actually pay the tipped wage rate that they informed Plaintiff and other delivery drivers that they would pay.

105. Defendants' unlawful conduct has been widespread, repeated, and consistent.

106. The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

107. The FLSA Collective members are readily identifiable and ascertainable.

108. In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

### Class Action Allegations

109. Plaintiff brings the Second and Third Counts under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at the Defendants' Toppers Pizza stores in the State of Wisconsin between the date two years prior to the filing of the original complaint and the date of final judgment in this matter ("Rule 23 Class").

13

110. Excluded from the Rule 23 Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

111. The number and identity of the Rule 23 Class members are ascertainable from Defendants' records.

112. The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each Rule 23 Class Member are determinable from Defendants' records.

113. All of the records relevant to the claims of Rule 23 Class Members should be found in Defendants' records.

114. For the purpose of notice and other purposes related to this action, their names and contact information are readily available from Defendants.

115. Notice can be provided by means permissible under Rule 23.

116. The Rule 23 Class member are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

117. There are more than 50 Rule 23 Class members.

118. Plaintiff's claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

119. Plaintiff and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with Wisconsin wage law.

120. Plaintiff and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

121. Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Class and has no interests antagonistic to the Rule 23 Class.

122. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

123. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

124. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

125. Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiff and the Rule 23 Class members individually and include, but are not limited to:

    a. Whether Plaintiff and the Rule 23 Class members were subject to a common expense reimbursement policy that resulted in wages to drop below legally allowable minimum wage;

    b. Whether Plaintiff and the Rule 23 Class were subject to a policy that required them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

15

Case 2:20-cv-01202-LA   Filed 08/06/20   Page 15 of 20   Document 1

c. Whether Plaintiff and the Rule 23 Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

   d. Whether Defendants reimbursed Plaintiff and the Rule 23 Class members for their actual expenses;

   e. Whether Defendants reimbursed Plaintiff and the Rule 23 Class members at the IRS standard business mileage rate for the miles they drove in making deliveries;

   f. Whether Defendants properly reimbursed Plaintiff and the Rule 23 Class members;

   g. Whether Defendants properly claimed a tip credit from the wages of Plaintiff and the Rule 23 Class;

   h. Whether Plaintiff and the Rule 23 Class were actually paid the wage rate they were promised by Defendants;

   i. Whether Defendants failed to pay Plaintiff and the Rule 23 Class as required by Wisc. Admin. Code § DWD 272.03(2)(b);

   j. The nature and extent of class-wide injury and the measure of damages for those injuries.

126. In recognition of the services Plaintiff has rendered and will continue to render to the Rule 23 Class, Plaintiff will request payment of a service award upon resolution of this action.

### Causes of Action

Count 1
Failure to Pay Minimum Wages - Fair Labor Standards Act
(On Behalf of Plaintiff and the FLSA Collective)

127. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

128. Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

129. Defendants paid Plaintiff and the FLSA Collective at or close to minimum wage for all hours worked.

16

130. Defendants required and continue to require Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, and failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

131. Defendants failed to properly claim a tip credit from the wages of Plaintiff and the FLSA collective because Plaintiff and the FLSA collective were paid a wage rate lower than Defendants informed them that they would be paid.

132. By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

133. Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

134. As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

### Count 2
### Failure to Pay Minimum Wages – Wis. Stat. § 104.01 et seq.
### (On Behalf of Plaintiff and the Rule 23 Class)

135. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

136. Defendants paid Plaintiff and the Rule 23 Class below minimum wage for the hours they worked by requiring them to cover automobile expenses and other job-related expenses.

137. Defendants ostensibly paid Plaintiff and the Rule 23 Class at or close to minimum wage for the hours they worked.

138. Because Defendants required Plaintiff and the Rule 23 Class to pay for automobile expenses and other job-related expenses out of pocket, Defendants failed pay Plaintiff and the Rule 23 Class minimum wage.

139. Defendants failed to require Plaintiff and the Rule 23 Class to sign a tip declaration each pay period, as required by Wisc. Admin. Code § DWD 272.03(2)(b).

140. Defendants have unlawfully claimed a tip credit on Plaintiff's and the Rule 23 Class's wages by failing to comply with Wisc. Admin. Code § DWD 272.03(2)(b).

141. By not paying Plaintiff and the Rule 23 Class at least minimum wage for each hour worked, Defendants have violated Wis. Stat. § 104.01 et seq.

142. As a result of Defendants' violations, Plaintiff and the Rule 23 Class are entitled to unpaid minimum wages, unreimbursed expenses, liquidated damages, attorneys' fees and costs.

### Count 3
### Untimely Payment of Wages – Wis. Stat. § 109.01 et seq.
### (On Behalf of Plaintiff and the Rule 23 Class)

143. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

144. During all relevant times, Defendants were covered by Wis. Stat. § 109.02, and Plaintiff and the Rule 23 Class were employees within the meaning of Wis. Stat. § 109.01 and were not exempt from its protections.

145. Wis. Stat. § 109.03(1) requires that Defendants pay Plaintiff and the Rule 23 Class all wages earned by the employee to a day not more than 31 days prior to the date of payment.

146. By failing to pay Plaintiff and the Rule 23 Class all wages due to them under the FLSA and Wisconsin wage and hour law, Defendants have also violated Wis. Stat. § 109.03(1).

147. Plaintiff and the Rule 23 Class's unpaid wages and unreimbursed expenses have remained unpaid for more than thirty-one (31) days beyond their regularly scheduled payday.

148. Plaintiff's and the Rule 23 Class's entitlement to the wages sought herein is and has been undisputed.

149. In violating Wisconsin law, Defendants acted willfully, without a good faith basis and with reckless disregard to Wisconsin law.

150. As a result of Defendants' violations, Plaintiff and the Rule 23 Class are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, an additional .5 times unpaid wages/unreimbursed expenses in damages under Wis. Stat. § 109.11(2)(a), costs, and attorneys' fees.

WHEREFORE, Plaintiff Jason Patzfahl prays for all of the following relief:

A. Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

B. Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C. Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

D. Designation of Plaintiff as representative of the Rule 23 Class and counsel of record as Class Counsel.

E. A declaratory judgment that the practices complained of herein are unlawful under Wis. Stat. § 104, Wis. Stat. § 109.03(1), and the Wisconsin wage and hour laws.

F. An award of unpaid minimum wages and unreimbursed expenses due under Wis. Stat. § 104, Wis. Stat. § 109.03(1), and Wisconsin wage and hour laws.

G. An award of damages under Wis. Stat. § 109.11(2)(a), based on Defendants' failure to pay wages, calculated as an additional .5 times of back wages.

H. Liquidated damages under Wis. Stat. § 109.03(1).

I. An award of damages under Wisc. Admin. Code §§ DWD 272.01 et seq.

J. An award of prejudgment and post-judgment interest.

K. An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

L. Such other legal and equitable relief as the Court deems appropriate.

PLAINTIFF DEMANDS A JURY AS TO ALL TRIABLE ISSUES

Respectfully submitted,

/s/ Andrew P. Kimble
Andrew P. Kimble
Nathan B. Spencer
BILLER & KIMBLE, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45209
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
akimble@billerkimble.com
nspencer@billerkimble.com

www.billerkimble.com

Counsel for Plaintiff and the putative class

20