# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JASON PATZFAHL,
*On behalf of himself and*
*those similarly situated*,

        Plaintiff,

    v.                          Case No. 20-C-1202

FSM ZA, LLC, et al.,

        Defendants.

## ORDER

Patzfahl brings this putative class and collective action against FSM ZA, LLC, Perfect Timing, LLC, and Garret Burns to recover unpaid wages for himself and similarly situated Toppers Pizza delivery drivers under the Fair Labor Standards Act and Wisconsin's wage and hour laws. Defendants' motion to dismiss for failure to state a claim and Patzfahl's motion for conditional certification are fully briefed. For the reasons stated below, I will deny Defendants' motion to dismiss and grant Patzfahl's motion for conditional certification.

## I.    Background

FSM ZA, LLC, Perfect Timing, LLC, and Garett Burns (collectively, "Defendants") own and operate four Toppers Pizza stores in Wisconsin. *Id.*, ¶¶ 2, 13–14, 22–23, 31. Defendants assign drivers at each of these stores the same duties. *Id.*, ¶ 54. When the stores do not have any delivery orders, drivers fold boxes, clean dishes, stock coolers, mop and sweep the floors, take out the trash, and prepare food, among other tasks. *Id.*, ¶ 55. Defendants also pay the delivery drivers in the same manner across all four stores.

*Id.*, ¶ 78. Defendants pay the drivers the minimum wage subject to a tip credit. *Id.*, ¶ 56. Defendants require the drivers to provide their own car and incur the costs associated with driving the car at work. *Id.*, ¶ 57–58. Defendants do not reimburse the drivers for their actual expenses. *Id.*, ¶ 71. Nor do they track or record the drivers' actual expenses—by collecting receipts, for example. *Id.*, ¶ 63–70. Instead, Defendants reimburse the drivers at a mileage rate that is less than the IRS's standard business milage rate. *Id.*, ¶ 61.

Patzfahl was a delivery driver at a Toppers Pizza store owned and operated by Defendants. *Id.*, ¶ 53. Specifically, he worked at the Toppers Pizza in Franklin, Wisconsin, from October 2019 to July 2020. *Id.*, ¶ 84. The same polices described above were in effect during Patzfahl's employment. *Id.*, ¶¶ 85–101. When he did not have orders to delivery, Patzfahl worked inside the store on other tasks. *Id.* ¶ 86. Defendants paid him the minimum wage subject to a tip credit. *Id.*, ¶ 85. In compliance with Defendants' policy, Patzfahl drove his own car for deliveries. *Id.*, ¶ 88. Defendants required Patzfahl to maintain and pay for an operable, safe, and legally compliant vehicle. *Id.*, ¶ 94. As a result, he incurred numerous job-related expenses, including costs associated with vehicle depreciation, gasoline, maintenance, insurance, cell phone services, GPS services, financing, and licensing and registration. *Id.*, ¶ 95–96. Defendant did not track Patzfahl's actual expenses by collecting receipts or otherwise. *Id.*, ¶¶ 97–98. They did not reimburse him for his actual expenses either. *Id.*, ¶ 99. Instead, from October 2019 to December 2019, Defendants reimbursed Patzfahl $1.00 per delivery. *Id.*, ¶ 89. From January 2020 to July 2020, Defendants reimbursed him $2.00 per delivery. *Id.*, ¶ 90. Patzfahl regularly drove six to seven miles per delivery and made three deliveries per

2

hour. *Id.*, ¶¶ 91, 101–02. Thus, Defendants reimbursed him between 14 to 17 cents per mile in 2019 and 28 to 33 cents per mile in 2020. *Id.*, ¶ 92–93.

Patzfahl filed this action on August 6, 2020. He alleges that Defendants' reimbursement rate fell below his actual expenses as well as a reasonable approximation of his actual expenses, which he pegs to the IRS mileage rate. *Id.*, ¶¶ 99, 104. Accordingly, Patzfahl claims that he and similarly situated drivers "kicked back" to Defendants amounts sufficient to cause a minimum wage violation. *Id.*, ¶ 79. He also claims that Defendants failed to properly inform him and similarly situated drivers of their tip credit and never had drivers sign a tip declaration. *Id.*, ¶¶ 81–82.

The parties agreed to conduct limited discovery with respect to conditional certification on November 20, 2020. ECF No. 15. After four months, Patzfahl filed the now-operative amended complaint, naming Perfect Timing, LLC, as a defendant. ECF No. 18. At the same time, he filed his motion for conditional certification. ECF No. 19. He seeks authorization to send notice to the following group:

> All current and former delivery drivers employed at any Toppers Pizza location owned and operated FSM ZA, LLC, Perfect Timing, LLC, and/or Garett Burns from August 6, 2017, to the date of this order.

ECF No. 19.

Two weeks later, Defendants filed their motion to dismiss. ECF No. 21.

## II.     Defendants' Motion to Dismiss

A motion to dismiss for failure to state a claim tests the legal sufficiency of a complaint not its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

3

(2007)). I must "accept the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

Defendants contend that Patzfahl did not adequately allege that Perfect Timing, LLC, was his employer. Patzfahl responds by noting that an employee may have more than one employer under the FLSA and that the complaint sufficiently alleged that Perfect Timing, LLC, was his employer.

The Fair Labor Standards Act defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). To "employ" means "to suffer or permit to work." 29 U.S.C. § 203(g). The Supreme Court has directed courts to examine the economic realities of the employment relationship to give substance to these broad definitions. *See, e.g., Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33 (1961); *see also Hollins v. Regency Corp.*, 867 F.3d 830, 835 (7th Cir. 2017).

It is well established that an employee can have more than one employer at the same time under the FLSA. *See Falk v. Brennan*, 414 U.S. 190, 195 (1973). Indeed, the federal regulations provide insight into joint employer scenarios. *See* 29 C.F.R. § 791.2. The regulations and the Seventh Circuit make clear that control is the touchstone for joint employer analysis. *Moldenhauer v. Tazewell-Pekin Consol. Commc'ns Ctr.*, 536 F.3d 640, 644 (7th Cir. 2008) (applying FLSA joint employer standard in the Family and Medical Leave Act context); *see also* 29 C.F.R. §§ 791.2(a)(3), (e)(1)(iii). "[F]or a joint-employer

4

relationship to exist, each alleged employer must exercise control over the working conditions of the employee, although the ultimate determination will vary depending on the specific facts of each case*." Moldenhauer*, 536 F.3d 640 at 644. Relevant factors include "whether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of payments, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* (internal quotations removed); *see also* 29 C.F.R. §§ 791.2(a)(3) (same). However, the Seventh Circuit has cautioned that these might not be "the *only* relevant factors, or even the most important." *Moldenhauer*, 536 F.3d 640 at 644 (emphasis original).

Wisconsin's minimum wage law also defines employer with a focus on control. *See Pope v. Espeseth, Inc.*, 228 F. Supp. 3d 884, 891 (W.D. Wis. 2017) (noting that Wisconsin's minimum wage law "require[s] at least as much of a showing of control as the FLSA."). An "employer" is any person who has "control or direction of any person employed at any labor or responsible directly or indirectly for the wages of another." Wis. Stat. § 104.01(3)(a). Therefore, for either the FLSA or Wisconsin's minimum wage law, the ultimate inquiry is whether the alleged employer exerted control over the employee based on the economic realities of the employment relationship.

Perfect Timing, LLC, asserts that it "never employed Plaintiff Jason Patzfahl." ECF No. 22 at 1. However, Patzfahl *alleges* that he was an "employee" of Perfect Timing, LLC, and that Perfect Timing, LLC, was his "employer" "as defined in the FLSA and Wisconsin wage and hour law." *See* ECF No. 18, ¶¶ 10, 27. He further *alleges* that Perfect Timing, LLC, "has substantial control over Plaintiff['s] . . . working conditions," "has direct or indirect control of the terms and conditions of Plaintiff's work," and "maintains control,

oversight, and direction over Plaintiff . . . including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices." *Id.*, ¶¶ 24–26.

Perfect Timing, LLC, argues that Patzfahl's allegation should not be accepted as true because they are "vague and barebones conclusions" that only "recite a 'punch list' of economic realities test considerations." ECF No. 22 at 5–6. It cites two district court decision outside of this circuit for support. *Hunter v. Agility Energy, Inc.*, 419 F. Supp. 3d 1269, 1273–77 (D. Utah 2019); *Diaz v. U.S. Century Bank, Int'l Risk Response, Inc.*, No. 12-21224-CIV, 2012 WL 2514906, at *2 (S.D. Fla. June 28, 2012). For his part, Patzfahl characterizes his allegations as "fairly specific factual support." ECF No. 26 at 5.

The Northern District of Illinois considered nearly identical allegations and arguments in two recent cases. *Ivery v. RMH Franchise Corp.*, 280 F. Supp. 3d 1121, 1227–32 (N.D. Ill. 2017); *Piazza v. New Albertsons, LP*, No. 20-CV-03187, 2021 WL 365771, at *2–*5 (N.D. Ill. Feb. 3, 2021). In *Ivery*, the plaintiff brought a FLSA action against the parent company of a franchise and two of its subsidiaries. *Ivery*, 280 F. Supp. 3d at 1125. The defendants moved to dismiss one of the subsidiaries. *Id.* at 1126. The complaint contained similar allegations to the instant complaint: the defendants "share[d] control over the terms and conditions of [Plaintiff's] employment," "directly or indirectly and jointly or severally, directed the terms of employment and compensation of Plaintiff," and "had the power to control the terms and conditions of employment of Plaintiff." *Id.* at 1129. The court concluded that "[t]hese sorts of conclusory allegations are not entitled to a presumption of truth." *Id.* While other allegations demonstrated the three entities cooperated, the complaint lacked any additional factual matter that established the

subsidiary controlled her employment. *Id.* 1130. In dismissing the claim against the subsidiary, the court noted that the plaintiff "does not suggest that this sort of basic information is beyond her ken." *Id.*

In *Piazza*, the plaintiff similarly brought a FLSA action against three corporate affiliates, and only one entity moved to dismiss. *Piazza*, 2021 WL 365771, at *1. The complaint alleged that the entity was the plaintiff's employer as "defined by the FLSA" and "qualifie[d] as a joint employer because it shared control over her work environment." *Id.* at *3. It further alleged that all three defendants "jointly and collectively maintained control, oversight, and direction over Plaintiff . . . including with respect to the timekeeping, payroll, and other employment practices that applied to them." *Id.* The court accepted these allegations as true and concluded that they were sufficient to allege the entity was an employer. *Id.* at *3, *5. It then distinguished *Ivery*. *Id.* at *4. Unlike the plaintiff in *Ivery*, the plaintiff in *Piazza* asserted that the identity of the company that owned the store in which she worked was, in fact, "beyond her ken" because the publicly available information did not establish that fact. *Id.* Accordingly, the court found it would be premature to dismiss the case before discovery. *Id.*

I agree with the *Piazza* court that Patzfahl's allegations must be accepted as true. They do not constitute a formulaic recitation of the elements of a cause of action. Instead, they are factual matters that, if proven, would establish an element of a FLSA or Wisconsin minimum wage cause of action. Even though Patzfahl has engaged in limited discovery for purposes of conditional certification, that only suggests that he could have pleaded more facts on the issue. But that is not the standard for a motion to dismiss for failure to state a claim. So long as the complaint contains enough well-pleaded allegations

7

to plausibly state a claim against Perfect Timing, LLC, I must not dismiss the claim. Patzfahl has done that, so I will deny Defendants' motion to dismiss.

### III.      Patzfahl's Motion for Conditional Certification

The Fair Labor Standards Act authorizes collective "actions by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). FLSA collective actions are distinct from Rule 23 class actions. *See Woods v. New York Life Ins. Co.*, 686 F.2d 578, 580 (7th Cir. 1982). Unlike members of a Rule 23 class action, who must opt out of the class, employees in a FLSA collective action must opt in by providing written consent. *Id.* Beyond the opt-in mechanism, "[t]he FLSA does not specify the details of how collective actions are to proceed." *Jirak v. Abbott Lab'ys, Inc.*, 566 F. Supp. 2d 845, 847 (N.D. Ill. 2008). The Supreme Court had left that task to the discretion of the district courts. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170–72 (1989).

Most courts "have adopted a two-step process for determining whether an FLSA lawsuit should proceed as a collective action." *Jirak*, 566 F. Supp. 2d at 847. The first step is conditional certification, which "enables notification to putative class members so that they may affirmatively opt in to the collective action and class discovery may be taken." *Abukar v. Reynolds Mach. Co. LLC*, 2019 WL 6896154, at *2 (E.D. Wis. Dec. 18, 2019). At this stage, the plaintiff must make a "modest factual showing" that he is similarly situated to potential collective action members. *See Meetz v. Wisconsin Hosp. Grp. LLC*, 2017 WL 3736776, at *3 (E.D. Wis. Aug. 29, 2017). "The second step typically occurs after discovery, when the defendant asks the court to determine whether the opt-ins are

in fact similarly situated." *Williams v. Cargill Meat Sols. Corp.*, 2010 WL 2643405, at *1 (E.D. Wis. June 30, 2010).

I will not accept Defendants' invitation to apply an intermediate level of scrutiny at this stage. There is no indication that the parties have engaged in the "substantial discovery" that normally warrants a more rigorous standard. *Compare Paswaters v. Krones Inc.*, 2020 WL 419336, at *2 n.2 (E.D. Wis. Jan. 27, 2020) (applying traditional "lenient standard" when the parties have conducted three depositions) *with Hawkins v. Alorica, Inc.*, 287 F.R.D. 431, 439 (S.D. Ind. 2012) (applying intermediate level of scrutiny when the parties have conducted ten depositions and exchanged 6,000 pages of documents) *and Bunyan v. Spectrum Brands, Inc.*, 2008 WL 2959932, at *4 (S.D. Ill. July 31, 2008) (applying intermediate level of scrutiny when the parties had engaged in discovery for eleven months). Over four months, Defendants only deposed Patzfahl and responded to several interrogatories and requests for production of documents. This case calls for the traditional lenient standard.

Patzfahl has made a modest factual showing that he and other delivery drivers employed at Toppers Pizza stores owned and operated FSM ZA, LLC, Perfect Timing, LLC, and/or Garett Burns "are victims of a common, unlawful policy or practice." *Id.* In response to Patzfahl's interrogatories, Defendants acknowledge that delivery drivers at their Toppers Pizza stores were paid according to the same compensation and reimbursement policies. ECF No. 20-1 at 4–5. When drivers are delivering orders, they earn $5.00 to $5.50 per hour plus tips. *Id.* The drivers also earned a flat fee to cover delivery-related expenses. *Id.* The fee was originally $1.00 per delivery, but it is now $2.00 per delivery. *Id.* In his declaration, Patzfahl confirms that he and his coworkers were

9

compensated and reimbursed according to these same policies. ECF No. 5-1, ¶¶ 7–8, 16–17. He has personal knowledge that his coworkers were subject to these policies based on his conversations with coworkers, Carl and Kim, and his manager, Keith, as well as his observations of the other drivers' records at checkout. *Id.*, ¶¶ 9, 18. Further, Patzfahl's FLSA and Wisconsin wage and hour claims arise from these policies. He claims that Defendants' policy of reimbursing drivers at a rate lower than their actual expenses or a reasonable estimation of their actual expenses caused the drivers to kick back to Defendants amounts sufficient to cause a minimum wage violation. ECF No. 18 at ¶ 79; *see also* ECF No. 20 at 2–4.

Defendants contend that conditional certification is inappropriate because Patzfahl does not have personal knowledge of the compensation and reimbursement policies beyond the Toppers Pizza store in Franklin, Wisconsin, and has not presented declarations from employees in the other stores. This would be an appropriate argument had Defendants not detailed the compensation and reimbursement policies applicable to all Toppers Pizza stores owned by FSM ZA, LLC, Perfect Timing, LLC, and Garett Burns in their discovery responses—but they did. *See Kelly v. Bluegreen Corp.*, 256 F.R.D. 626, 631 (W.D. Wis. 2009) ("Where an apparent company-wide policy is behind the alleged FLSA violations, the plaintiff seeking certification for a company-wide class action should not be required to collect specific violations from each location or from each state before seeking authorization to provide notice to employees from all locations.").

Nor does Patzfahl's failure to prove that a substantial number of other employees are interested in joining the action doom his bid for conditional certification. I agree with other district courts in this circuit that such a requirement "would undermine district courts'

ability to ensure class notice is fair and accurate by having named plaintiffs effectively issue their own form of informal notice or otherwise go out and solicit other plaintiffs before seeking conditional certification." *Perizes v. Dietitians At Home, Inc.*, 2021 WL 3849646, at *5 (N.D. Ill. Aug. 27, 2021) (internal citations omitted).

Defendants also make several arguments that are inappropriate at this stage of litigation. They contend that Patzfahl has not proven that Perfect Timing, LLC, was, in fact, his employer or that any defendant violated the FLSA. However, "at conditional certification, the inquiry is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are similarly situated with respect to their allegations that the law has been violated." *Paswaters*, 2020 WL 419336, at *3 (internal citations omitted). Moreover, Defendants' concerns about the potential for individualized damages calculations and defenses is premature. "Whether individual inquiries predominate over common questions of law and fact is a question better answered at the second step of the certification analysis." *Meetz v. Wisconsin Hosp. Grp. LLC*, 2017 WL 3736776, at *5 (E.D. Wis. Aug. 29, 2017).

Accordingly, I will grant Patzfahl's motion for conditional certification subject to the discussion below.

IV.     **Patzfahl's Proposed Notice**

Defendants also object to the form and content of the proposed notice. They argue that the notice should not be sent by email. Since *Espensheid*, however, email notice in FLSA collective actions has become the norm. *See, e.g., Rego v. Liberty Mut. Managed Care LLC*, 2017 WL 11418354, at *1 (E.D. Wis. Aug. 23, 2017); *Cobb v. Anthem Inc.*, 2020 WL 4351349, at *4 (S.D. Ind. July 27, 2020); *Piazza v. New Albertsons, LP*, 2021

11

WL 365771, at \*8 (N.D. Ill. Feb. 3, 2021). I will allow Patzfahl's attorneys to send the notice by email. Accordingly, Defendants shall produce a computer-readable list of the names, last known addresses, telephone numbers, email addresses, dates of employment, and job titles of potential collective action members.

Defendants ask for the case caption to be removed from the notice and for the notice to be placed on the letterhead of Patzfahl's attorneys. They argue that this is necessary to avoid the appearance of "judicial sponsorship" or a "judicial imprimatur." *Woods v. New York Life Ins. Co.*, 686 F.2d 578, 581 (7th Cir. 1982). However, the notice clearly states: "Although this notice and its contents have been authorized by the Court, the Court takes no position regarding the merits of Plaintiff's claims or the Toppers stores' defenses." It also identifies Patzfahl's attorneys as the proper contact multiple times and advises: "You should not contact the Court to ask questions about the case." These disclaimers are sufficient to avoid the evils identified in *Woods*. *See Morgan v. Crush City Constr.*, LLC, 2020 WL 42717, at \*7 (W.D. Wis. Jan. 3, 2020).

Defendants finally ask that I alter the language of the notice in several respects. I will not remove Perfect Timing, LLC, from the notice or edit the notice's language explaining potential fee awards. However, I agree with Defendants about the notice's language characterizing Patzfahl's attorneys as court appointed. Patzfahl shall either remove that sentence ("The U.S. District Court appointed the firm to represent the other delivery drivers in this action.") or replaced it with the following: "The Court authorized the firm to send this notice."

## V.    CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' motion to dismiss for failure to state a claim is **DENIED** and Patzfahl's motion for conditional certification is **GRANTED**.

**IT IS FURTHER ORDERED** that:

1. Within 14 days of this order, Defendants shall produce a computer-readable list of the names, last known addresses, telephone numbers, email addresses, dates of employment, and job titles for the following "Potential Collective Action Members": All current and former delivery drivers employed at any Toppers Pizza location owned and operated by FSM ZA, LLC, Perfect Timing, LLC, and/or Garett Burns from August 6, 2017, to the date of this order.

2. Patzfahl shall amend the proposed notice consistent with this opinion. Patzfahl is authorized to send the amended notice and consent form to the Potential Collective Action Members by mail and email. Patzfahl shall promptly notify the court and Defendants of the date on which he sent the notices and consent forms.

Dated at Milwaukee, Wisconsin, on this 21st day of October, 2021.

s/Lynn Adelman
LYNN ADELMAN
United State District Judge

13