IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| Jason Patzfahl, | |
| *On behalf of himself and those similarly situated*, | Case No. 2:20-cv-1202 |
| Plaintiff, | Judge Lynn S. Adelman |
| v. | |
| FSM ZA, LLC, *et al.*, | |
| Defendants. | |

PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT

Plaintiff Jason Patzfahl asks the Court to preliminarily approve the settlement between himself, the FLSA collective, and the Rule 23 class (collectively, "Plaintiffs"), and Defendants FSM ZA, LLC, Perfect Timing, LLC, and Garrett Burns (collectively, "Defendants").

The proposed Settlement Agreement, attached as Exhibit 1, resolves the collective and class-wide claims against Defendants raised in this lawsuit. Defendants do not oppose this motion.

As explained further in the attached Memorandum of Law, Plaintiffs request that the Court: (1) preliminarily approve the proposed settlement; (2) approve the form, content, and distribution of the class notice and claim form; (3) preliminarily approve the service award for Plaintiff Patzfahl; (4) approve the administrative expenses, (5) provisionally grant Class Counsel's request for attorneys' fees and costs; and (6) schedule a formal fairness hearing approximately 150 days after preliminary approval.

Respectfully submitted,

*/s/Andrew Kimble*
Andrew R. Biller (Ohio Bar # 0081452)
Andrew P. Kimble (Ohio Bar # 0093172)
BILLER & KIMBLE, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 202-0710
Facsimile: (614) 340-4620
*abiller@billerkimble.com*
*akimble@billerkimble.com*

www.billerkimble.com

Scott S. Luzi, State Bar No. 1067405
WALCHESKE & LUZI, LLC
15850 W. Bluemound Road, Suite 304
Brookfield, Wisconsin 53005
Telephone: (262) 780-1953
Facsimile: (262) 565-6469
*sluzi@walcheskeluzi.com*

*Counsel for Plaintiffs*

## 1. Introduction

Plaintiff Jason Patzfahl, on behalf of himself, the FLSA collective class, and the Rule 23 class, and the Defendants FSM ZA, LLC, Perfect Timing, LLC, and Garrett Burns have reached a settlement that would resolve all the claims raised in this lawsuit as set forth in the Settlement Agreement (attached as Exhibit 1[1]). Plaintiffs now ask the Court for preliminary approval of the parties' Settlement Agreement and order the parties to carry out the notice process.

## 2. Background

This lawsuit centers around Plaintiffs' allegations that the Defendants inadequately reimbursed the delivery drivers at their four Toppers Pizza stores for their delivery and driving-related expenses. *See* Amended Complaint, Doc. 18. Plaintiffs allege that that Defendants required their delivery drivers to provide their own vehicles to deliver the Defendants' pizza and other food, and the failure to adequately reimburse the drivers caused their wages to fall below the federal minimum wage. *Id.* Plaintiffs also claim that Defendants failed to meet federal and state requirements for claiming a tip credit from the delivery drivers' wages. *Id.*

### 2.1. Procedural Posture

On August 6, 2020, Plaintiff Patzfahl filed this lawsuit. Doc. 1.

---

[1] The attached settlement agreement has been signed by Plaintiff, but has not yet been signed by Defendants. The parties intend to file the fully executed settlement agreement with the Motion for Final Approval. If the Court would like to receive fully executed copy before then, however, the parties can supplement this filing once the agreement is fully executed.

1

On September 9, 2020, Plaintiff Patzfahl filed a Motion to Send Notice of FLSA Collective Action to Similar Situated Employees. Motion to Send Notice, Doc. 4. At Defendants' request, however, consideration of Plaintiff's Motion to Send Notice was stayed and the parties conducted limited discovery on the question of conditional certification. Docs. 12, 13.

On March 29, 2021, Plaintiff moved to amend his Complaint to add Defendant Perfect Timing, LLC. Doc. 18. On March 30, 2021, Plaintiff renewed his Motion to Send Notice. Doc. 19.

On April 12, 2021, Defendant Perfect Timing, LLC moved to dismiss the Complaint as against them. Doc. 21. On April 20, 2021, Defendants opposed Plaintiff's renewed Motion to Send Notice. Doc. 23.

On October 21, 2021, the Court denied Perfect Timing, LLC's Motion to Dismiss and granted Plaintiff's Motion to Send Notice. Doc. 33 (authorizing notice to "[a]ll current and former delivery drivers employed at any Toppers Pizza location owned and operated by FSM ZA, LLC, Perfect Timing, LLC, and/or Garett Burns from August 6, 2017, to the date of this order."). After sending notice, 24 delivery drivers signed and filed consent forms to opt-in to the lawsuit. This resulted in a 25-member FLSA Collective Class, including Plaintiff Patzfahl (the "opt-in Plaintiffs" or "opt-ins").

For much of the case, Defendants objected to discovery that related to anyone other than the named Plaintiff, Jason Patzfahl, on the grounds that no FLSA collective action or Rule 23 class action had been certified. After conditional certification was granted, Defendants produced some, but not all, requested information related to the 25 opt-in plaintiffs, but refused to provide responsive information for the whole class. Even after class certification was granted, the parties had multiple discovery disputes about what information Defendants were required to produce.

The parties also contested what discovery was properly requested from the opt-in plaintiffs. Defendants sought to serve written discovery on all 25 opt-in plaintiffs and sought depositions from five opt-in plaintiffs. Because Plaintiff did not believe these individuals had any relevant information to provide that could not be gleaned from Defendants' own records, Plaintiff objected to this discovery. Eventually, Defendants moved to compel this discovery. Docs. 56, 58. Eventually, Defendants took the depositions of five opt-in plaintiffs.

On May 11, 2022, Plaintiffs filed a Motion for Rule 23 Class Certification for Plaintiffs' Wisconsin state law claims. Motion for Class Certification, Doc. 60. Defendants opposed this Motion. Doc. 67. The Class Certification Motion sought an Order certifying this action as a class action and designating Plaintiff Patzfahl as the representative of the following class:

> All current and former delivery drivers employed by Defendants at the Defendants' Toppers Pizza stores in the State of Wisconsin between the date two years prior to the filing of the original complaint and the date of final judgment in this matter ("Rule 23 Class").

*Id.*

On December 19, 2022, the Court granted class certification. Order, Doc. 75. Notice was distributed to the class members on January 13, 2023, and the class notice period ended on March 14, 2023. *See* Doc. 77, p. 1. One person opted out of the class, leaving a total of 87 class members.

On April 12, 2023, the parties then participated in mediation with Alan D. Albert of O'Hagan Meyer serving as mediator. *Id.* No resolution was reached at mediation, but the parties continued settlement discussions, while moving forward with the litigation.

On August 15, 2023, Plaintiffs moved for summary judgment on the question of how to value vehicle expenses for purposes of calculating minimum wage compliance. Doc. 83.

3

Finally, in August 2023, with the Court's encouragement, the parties reached a negotiated settlement. *See* Ex. 1; Docket Annotation, Doc. 88.

## 2.2. Plaintiffs' Unpaid Wage Claims

Plaintiffs' legal theory is generally described above. In sum, Plaintiffs allege that Defendants' reimbursement rate was inadequate and, as a result, drove the delivery drivers' wages below the legally mandated minimum wage.

Plaintiffs seek under-reimbursed vehicle expenses and the difference between the tipped wage rate paid and full minimum wage for all hours worked under the FLSA and Wisconsin wage and hour law. Plaintiffs also seek liquidated damages in the amount of 100% of unpaid wages for the opt-in Plaintiffs under the FLSA, and 50% of the amount of unpaid wages for the Rule 23 Class under Wisconsin law. *See* 29 U.S.C. § 216(b); Wis. Stat. 109.11(2)(a). As mentioned above, the Court conditionally certified the case as an FLSA collective action and certified the Rule 23 class under Fed. R. Civ. P. 23 for the Wisconsin state law claims.

The extent of the potential damages at issue is based on what the Court ultimately determines to be the proper reimbursement rate. Plaintiffs allege that the proper reimbursement rate is the IRS rate. *See, e.g., Parker v. Battle Creek Pizza, Inc.*, 600 F. Supp. 3d 809, 814 (W.D. Mich. 2022). Based on Defendants' records, if Plaintiffs prevailed on this issue, Plaintiffs estimate that the unpaid wages on this claim would be from approximately $47,827.66 to $93,669.43.[2] Defendants, on the other hand, claim that they are not required to reimburse at the IRS rate, but

---

[2] While there is no dispute that some of the deliveries completed by the class were completed on the same "trip" as other deliveries (e.g., a driver would take 2 or 3 deliveries on a single departure from the store), which would affect the total number of miles driven, Defendants records do not clearly show which deliveries were taken as part of a multi-delivery trip. The numbers above reflect a range between Defendants' estimate and Plaintiffs' estimate of the damages, taking into account the fact that some deliveries were taken together.

4

can instead reimburse a "reasonably approximate amount." *See, e.g., Perrin v. Papa John's Int'l, Inc.*, 114 F. Supp. 3d 707 (E.D. Mo. 2015). If Defendants were to win on this issue, they could then argue that what they paid was a "reasonable approximation." If this argument is successful, it could reduce the damages to zero; *i.e.*, Defendants did not break the law at all. Alternatively, the Court could find that a rate higher than what Defendants paid is appropriate. In that case, the damages would be calculated as the difference between the reimbursement rate paid and the "reasonable" rate arrived at by the Court.

Second, Plaintiffs seek the "tip credit differential," *i.e.*, the difference between full minimum wage and the tipped wage rate Defendants ostensibly paid, because Defendants failed to meet the requirements for taking a tip credit. For the Rule 23 Class, Wisconsin administrative regulations require employers to collect a tip-credit declaration each pay period that shows no less than the minimum rate was received by the employee when adding in tips and this must be signed by each respective employee. Wis. Admin. Code DWD § 272.03(2)(b)(1). Plaintiffs allege Defendants failed to meet this requirement. If Plaintiffs were successful on this claim, the class would be entitled to $56,444.96 in unpaid wages. Defendants, however, claim that the delivery drivers provided sufficient acknowledgment of their tipped wage through the company's electronic system to meet the Wisconsin requirement. If they prevailed on this argument, the damages on this claim would be zero.

Alternatively, under the FLSA, Plaintiffs claim that Defendants failed to meet the requirements for claiming a tip credit because, after accounting for unreimbursed vehicle expenses, Defendants failed to pay the drivers at the tipped wage rate they promised to pay. *See, e.g., Estate of McConnell v. EUBA Corp.*, 2021 U.S. Dist. LEXIS 97576, at *3-4, *11-12 (S.D. Ohio May 24,

5

2021) ("When an employer fails to actually pay the cash wage that they informed their tipped employees that they would pay, the employer fails to meet the requirements for taking a tip credit."). Unlike the Wisconsin law claim, this claim applies only to the 25 individuals who joined the case and depends on a finding that Defendants did not adequately reimburse the drivers. The damages for this claim overlap with the Wisconsin tip credit claim.

The parties would also argue about the appropriate statute of limitations. Under Wisconsin law, the class has been certified to cover claims from August 6, 2018 to the date when Defendants sold their stores. Doc. 75, p. 3; Wis. Stat. § 893.44(1); *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S. Ct. 756, 38 L. Ed. 2d 713 (1974). Under the FLSA, the statute of limitations is two years by default, and three years if Plaintiffs prove Defendants acted willfully. 29 U.S.C. § 255(a). But, for FLSA claims, the statute of limitations continues to run until an individual files their consent to join form. Most of the opt-ins joined the case in late 2021 or early 2022, which means, absent equitable tolling and a willfulness finding, the statute will go back to only late 2020 for the opt-in plaintiffs.[3] For those who did not opt in, the statute of limitations on their possible FLSA claims is still running.

Based on the above, the unpaid wages in this case range from $0 to $150,114.39.

In addition, Plaintiffs would seek "liquidated damages" in the amount of 100% (FLSA) or 50% (Wisconsin) of unpaid wages. Plaintiffs would seek liquidated damages under the FLSA for the opt-ins, and under Wisconsin law for the non-opt ins. Defendants could present a defense to these damages, but they would have to prove that they acted in good faith and with a reasonable basis. 29 U.S.C. § 260.

---

[3] Defendants owned the stores from December 19, 2018 to June 28, 2021, when they sold the stores.

### 3. Summary of Settlement Terms

The settlement agreement creates a settlement fund of $99,194.42 (the "Settlement Fund"). *See* Ex. 1, § 3(A). Under the terms of the Agreement, unless they decide to opt out, each class member who worked for the Defendants at any time between August 6, 2017, and June 28, 2021, will receive a share of the settlement fund. For purposes of the settlement agreement, "Class Member" means:

> All current and former delivery drivers employed from August 6, 2017, to June 28, 2021 at Defendants' Toppers stores. These individuals are collectively referred to as "the Class" and individually as "Class Members."

*See*, Ex. 1, § 1(B).

After the service award and administrative expenses are deducted, the remainder of the settlement fund will be distributed based on hours worked as a delivery driver by each Class Member during the period from August 6, 2017, to June 28, 2021 ("Class Period"), divided by the total hours worked as a delivery driver by all Class Members during the Class Period. Ex. 1, § 3(C)(ii). However, all those who opted into the case for their FLSA claims—the "Opt In Subclass"—will have their hours counted at 1.25×. *See id*. This recognizes that the FLSA Collective Class members preserved more of their claims by opting-in to the case for FLSA purposes when they did. Any unclaimed funds would be distributed *cy pres* to the Greater Milwaukee Foundation Violence Prevention Fund. Ex. 1, § 5(A)(viii).

In addition to the Settlement Fund, Defendants agree to pay Plaintiff's Counsel's reasonable attorneys' fees and costs separately in the amount of $130,000, and advanced litigation expenses in the amount of $12,345.22. Ex. 1, § 4(A).

7

Upon preliminary approval, a Notice of Settlement (attached as Exhibit 1 to the Settlement Agreement) will be distributed to the Class Members providing them with an opportunity to object or opt out before the Court considers whether to grant final approval. The Notice Period is 60 days.

Within 30 days of final approval, Defendants will distribute all of the class members' awards and the first approximately $75,805.58 in attorneys' fees and costs. Over the course of the following year, Defendants will pay the remainder of the attorneys' fees and costs due under the settlement agreement through monthly installment payments to Plaintiffs' counsel.

### 4. Standard for Settlement Approval

There is a strong judicial policy in favor of settlement, in order conserve scarce resources that would otherwise be devoted to protracted litigation. *Air Line Stewards & Stewardesses Asso. v. Trans World Airlines, Inc.*, 630 F.2d 1164, 1167 (7th Cir. 1980); *see also Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 313 (7th Cir. 1980) ("Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources") (overruled on other grounds by *Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998)). This includes the "strong initial presumption" in class action cases "that the compromise is fair and reasonable." *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001) (internal quotations omitted).

When approving an FLSA settlement, courts look at whether the settlement is "'a fair and reasonable resolution of a bona fide dispute' over FLSA provisions." *Benoskie v. Kerry Foods, Inc.*, 2020 U.S. Dist. LEXIS 177538, at *5 (E.D. Wis. Sep. 28, 2020) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354-55 (11th Cir. 1982)).

With respect to class action litigation, resolution by settlement is favored by the federal courts. *Isby v. Bayh*, 75 F.3d 1191, 1996 (7th Cir. 1996). Settlement of a Fed. R. Civ. P. 23(b)(3) class action may be approved only if: (1) the individual class members are afforded an opportunity to request exclusion from the settlement; (2) a hearing has been conducted; and (3) the court finds that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e).

Preliminary approval is the first step in the two-step settlement process. *See Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982); *Shoemaker v. Bass*, 2020 U.S. Dist. LEXIS 269914, at *8 (W.D. Wis. Jan. 3, 2020). Preliminary approval amounts to "a preliminary determination whether the proposed settlement is 'within the range of possible approval.'" *Shoemaker*, 2020 U.S. Dist. LEXIS 269914, at *8 (quoting *Gautreaux*, 690 F.2d at 621, n.3). It allows the notice to be distributed to putative class members and for those class members to object or opt out of the settlement. *Id.*

In reviewing a proposed settlement agreement, courts "must weigh the probabilities of victory or defeat as indicated by the legal or factual situation presented and determine whether the compromise, taken as a whole, is in the best interests" of the class members. *United Founders Life Ins. Co. v. Consumers National Life Ins. Co.*, 447 F.2d 647, 655 (7th Cir. 1971) (internal quotations omitted); *see also Great Neck Capital Appreciation Inv. P'ship, L.P. v. Pricewaterhousecoopers*, 212 F.R.D. 400, 409 (E.D. Wis. 2002) (to approve a settlement, a court must determine that it is "fair, adequate and reasonable, and not a product of collusion.").

The Seventh Circuit has advised courts to evaluate the following factors in determining whether to approve a class action settlement: (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further

litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed. *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014) (quoting *Gautreaux*, 690 F.2d at 631); *Armstrong*, 616 F.2d at 314. These factors support approval here.

**5.  The Settlement Provides a Fair Resolution of Disputed Claims**

The factors above support approval of the proposed settlement.

*Success on the Merits.* "The Seventh Circuit has emphasized that the 'most important factor relevant to the fairness of a class action settlement is the strength of plaintiffs' case on the merits balanced against the amount offered in the settlement.'" *Bynum v. Cmty. Loans of Am., Inc.*, 2022 U.S. Dist. LEXIS 188785, at *4 (E.D. Wis. Oct. 17, 2022) (quoting *Wong*, 773 F.3d at 863). Courts consider whether there was a bona fide dispute between the parties and whether the settlement was the result of an arms-length negotiation by counsel well-versed in wage and hour law. *See Bynum*, 2022 U.S. Dist. LEXIS 188785, at *4.

Here, the settlement is an excellent result on the merits. First, Plaintiffs had to succeed on several motions before Defendants were willing to offer this proposed settlement. Plaintiffs prevailed on a motion to dismiss, a motion for FLSA conditional certification, and a motion for Rule 23 class certification. *See* Docs. 33, 75.

Second, Defendants have raised a number of potentially viable defenses to both liability and damages. Defendants claim that the reimbursement they paid was adequate, and therefore claim that they do not owe the drivers any money for unreimbursed expenses. If they prevailed on that

10

argument, Plaintiff's FLSA tip credit claim would also fail as a result, since it hinges on a finding of under-reimbursed expenses dropping the cash wage rate below the cash wage rate promised.

In addition, Defendants claim that Plaintiffs have over-estimated the amount of under-reimbursed expenses because, Defendants claim, Plaintiffs have not adequately accounted for the number of deliveries that were taken as part of a multi-delivery run, and therefore over-estimated the number of miles driven by the class. *See* Kimble Declaration, ¶6. Thus, even if Plaintiffs proved their expenses were not properly reimbursed, it is possible that their damages on the claim would be less than what they are getting through this settlement.

Finally, Defendants claim that they have complied with Wis. Admin. Code DWD § 272.03(2)(b)(1) because their computer operating system requires drivers to make various acknowledgements as they navigate the system, and they claim those acknowledgements satisfy their obligations under the Wisconsin law. If they prevailed on that argument, the value of Plaintiffs' tip credit claim under Wisconsin law would be zero.

Third, Defendants stated repeatedly throughout the lawsuit that they lacked the ability to pay a judgment in this case for the amounts of money that Plaintiffs claim they are owed because they had lost money on various business deals and no longer operate the Toppers Pizza stores in question. Defendants provided some financial statements to substantiate this claim. As it stands, Defendants will pay the settlement in two installments, with all of the class members' awards being paid as part of the first installment.

In light of these circumstances, a settlement for $99,194.42 is an excellent result on the merits. This results in each of the 87 class members receiving, on average, approximately $956, and no deductions will be taken from that amount for litigation expenses or attorneys' fees. *See,*

11

*e.g., Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust,* 834 F.2d 677, 682 (7th Cir. 1987) (finding a settlement of 10% of the total sought is adequate due to risks and costs of trial); *Viceral v. Mistras Group, Inc.*, No. 15-cv-02198, 2016 WL 5907869, at *7-8 (N.D. Cal. Oct. 11, 2016) (in class action for owed wages, settlement payment equal to 11.6% and 5.2% of estimated value of state and federal claims is fair and reasonable in light of strength and variability of claims and risks on merits); *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010) (finding that a recovery of one-third of the owed wages for class members, before deducting attorneys' fees and costs, is "well above" average); *Officers for Justice v. Civil Serv. Comm'n.*, 688 F.2d 615, 628 (9th Cir. 1982) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair.").

  *The complexity, length, and expense of further litigation.* If the parties did not settle, the case would have been complex, time-consuming, and expensive to take to a judgment. At the time the settlement was reached, Plaintiffs had filed a motion for summary judgment claiming that, because Defendants did not maintain records of the drivers' actual vehicle expenses, they were obligated to reimburse at the IRS standard business mileage rate. Doc. 83. Briefing on this point was not yet complete. If Plaintiffs prevailed on this issue, it would have streamlined the remainder of the case considerably because it would alleviate the need for the parties to litigate the question of whether Defendants reimbursed a "reasonably approximate amount." If, however, Plaintiffs did not prevail on this motion, the parties would have hired vehicle costing experts to opine on whether Defendants' reimbursement payments amounted to "reasonably approximate amounts." These

arguments would have been presented through complex motions for summary judgment and possibly a trial.

In addition, the parties would have to litigate over whether Garrett Burns qualifies as an employer under the FLSA and Wisconsin law. This is a complex and wide-ranging inquiry that must account for the "circumstances of the whole activity." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730, 67 S. Ct. 1473, 91 L. Ed. 1772 (1947). As a result, it would have required substantial discovery into Defendants' operations.

Further, discovery into Defendants' claim that they have met the requirements under Wisconsin law for obtaining a tip credit declaration from their employees would have been complex, involved substantial ESI discovery, and likely would have raised a unique fact pattern never considered under the regulation.

Also, Plaintiffs contend Defendants acted willfully, and Defendants contend they acted in good faith. These inquiries would have likewise required a wide-ranging factual inquiry into how and under what circumstances Defendants created their pay policies. These issues very well could have required a trial.

This factor weighs in favor of approving the settlement.

*Stage of the proceedings and the amount of discovery completed.* This settlement was reached after years of contested litigation. Plaintiffs prevailed on a motion to dismiss, a motion for conditional certification, and a motion for class certification. Substantial discovery had been completed such that Plaintiffs had a good sense of their possible damages, but significantly more discovery would have been necessary to prepare the case for summary judgment on all issues and a trial. Also, the discovery that was completed made clear that certain hotly contested issues—

such as a number of miles driven by class members—would be difficult to determine based on the records available. Thus, the stage of the proceedings supports approving the settlement. *See Great Neck Capital*, 212 F.R.D. at 410 (approving a settlement reached after defendant's motion to dismiss had been decided and merits discovery was well underway, which meant that plaintiffs' counsel's evaluation of the case was based on a reasonable amount of information).

*The amount of opposition to the settlement and the reaction of members of the class to the settlement.* This factor is not ripe for consideration yet because notice has not been sent. Class member opposition, if any, can be addressed after the notice process is complete.

*The opinion of competent counsel.* Plaintiffs' counsel has represented dozens of classes of pizza delivery drivers in vehicle expense under-reimbursement litigation. Exhibit 2, Declaration of Andrew Kimble, ¶ 23. Plaintiffs' counsel believes this settlement is very good considering the amount of money to be paid to the drivers, the strengths and weaknesses of the claims and defenses, the evidence available, and Defendants' repeated representations that they had limited money with which to pay a settlement.

**6. The Proposed Attorneys' Fees and Costs Award is Reasonable**

Under the FLSA and Rule 23, Plaintiffs are entitled to recover reasonable attorneys' fees and costs. *See* 29 U.S.C. 216(b); Fed. R. Civ. P. 23(h). Class Counsel applies for, and Defendants do not object to, an award of attorneys' fees of $130,000.00, to be paid separately from the settlement fund.

Courts have discretion to evaluate attorneys' fees in a class action and in an FLSA case using either the common fund method or the lodestar method. *Parker v. Villa of Greenfield LLC*,

14

No. 20-cv-1696-pp, 2022 U.S. Dist. LEXIS 200285, at *10 (E.D. Wis. Nov. 3, 2022) (citing *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994)).

Plaintiffs' fees are calculated using the lodestar method. The lodestar method for calculating fees is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rate. *Pickett v. Sheridan Health Care Center*, 664 F.3d 632, 639 (7th Cir. 2011) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)). "There is a 'strong presumption that the lodestar represents the reasonable fee.'" *Ellis v. Whitewater Auto Inc.*, No. 20-CV-37, 2023 U.S. Dist. LEXIS 20115, at *25-26 (E.D.Wis. Feb. 7, 2023) (quoting *City of Burlington v. Dague*, 505 U.S. 557, 562, 112 S. Ct. 2638, 120 L. Ed. 2d 449 (1992)); *Pickett*, 664 F.3d at 639. However, once the lodestar is determined, the court may adjust the fee upward or downward based on a variety of factors, the most important of which is the degree of success obtained. *Hensley*, 461 U.S. at 430, n.3, 436. The other factors to be considered as delineated by the Supreme Court are:

> (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the plaintiff's attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Tolentino v. Friedman*, 46 F.3d 645, 652 (7th Cir. 1995) (citing *Hensley*, 461 U.S. at 441). In sum, "the standard is whether the fees are reasonable in relation to the difficulty, stakes, and outcome

of the case." *Connolly v. Nat'l Sch. Bus Serv., Inc.*, 177 F.3d 593, 597 (7th Cir. 1999). Each of the *Tolentino* factors weighs in favor of approving the attorneys' fees.

*The Time and Labor Required*. As the Court is aware from the docket, this has been a hotly contested case since it was filed in August of 2020. Plaintiffs prevailed on a motion to dismiss certain entities, a motion for conditional certification of the case as an FLSA collective action, and a motion for class certification under Rule 23 of the Federal Rules of Civil Procedure. The parties also engaged in substantial discovery, including a number of discovery disputes, relating to the claims and defenses. Finally, just before the case settled, Plaintiffs filed a motion for partial summary judgment on the issue of whether Defendants were required to reimburse at the IRS rate since they did not keep any records of the drivers' vehicle expenses. *See* Doc. 83. All of this work was necessary to bring about the positive result that the proposed settlement provides for the class.

As of today's date, Plaintiffs' counsel has worked 538 hours for a total lodestar of $168,681.30 *See* Kimble Declaration, ¶ 11. But, to facilitate this settlement, and in recognition of Defendants' representation that they have limited funds, Plaintiffs' counsel has agreed to accept $130,000 in attorneys' fees. Defendants agree not to contest this amount. Plaintiffs' counsel's lodestar is calculated based on hourly rates that have been "repeatedly" deemed reasonable by U.S. District Courts. *See, e.g., McGrothers v. GT Pizza, Inc.*, No. 2:20-cv-4050, 2022 U.S. Dist. LEXIS 228270, at *16 (S.D. Ohio Nov. 9, 2022). Thus, the time and labor required supports approval of the fee request.

*The Novelty and Difficulty of the Question*. The question presented by this case is not novel— pizza drivers are suing their employers all across the country for these claims, and Plaintiffs' counsel in this case represents a significant number of those drivers. But, the questions presented

are difficult. "Wage and hour class and collective actions, such as this, are inherently complex and time-consuming." *Arledge v. Domino's Pizza, Inc.*, No. 3:16-cv-386-WHR, 2018 U.S. Dist. LEXIS 179474, at *5 (S.D. Ohio Oct. 17, 2018). The legal question of how to value vehicle expenses for FLSA compliance purposes when the employer has not maintained records of drivers' actual vehicle expenses is unsettled and complex. It involves questions of agency deference and statutory and regulatory interpretation. Plaintiffs' counsel recently argued the question before the Sixth Circuit Court of Appeals, but, to date, no circuit court has decided the issue. Plaintiffs' counsel has also argued this question in front of a number of U.S. District Courts. Those cases are largely split, with some courts adopting the Department of Labor Field Operations Handbook guidance, which provides that employers who have not maintained records of actual expenses are required to reimburse using the IRS standard business mileage rate operative at the time the miles were driven. DOL Handbook, § 30c15. Other courts have relied on an interpretation of the DOL regulations that would permit an employer to reimburse a "reasonably approximate amount" for the drivers' expenses. Under either standard, Plaintiffs believe they have been denied proper wages, but the outcome of this legal question determines what proof is necessary to prevail on the claim. The case also presents complex questions regarding the proper interpretation of Wisconsin's regulations, which require employers to obtain a tip credit declaration from their workers.

*The skill requisite to perform the legal service properly*. As discussed above, pizza delivery driver under-reimbursement cases are complex and therefore require attorneys skilled in wage and hour litigation in general and pizza driver cases specifically. Plaintiffs' counsel has been recognized for their expertise in this specific niche practice. *See, e.g., McConnell,* 2021 U.S. Dist. LEXIS

17

97576, at *21 ("The Court agrees that Biller & Kimble, LLC have proven themselves to be highly skilled advocates for pizza delivery drivers and other workers."); *Brandenburg v. Cousin Vinny's Pizza, LLC*, 2019 U.S. Dist. LEXIS 204371, at *6 (S.D. Ohio Nov. 25, 2019) ("The Court is familiar with Class Counsel's work in this and other cases like it. The 'pizza delivery driver' cases require substantial expertise and firm resources to pursue. The Court agrees that Class Counsel's work in this area is exemplary…"); *Mullins v. Southern Ohio Pizza, Inc.*, 2019 U.S. Dist. LEXIS 11019, *5 (S.D. Ohio Jan. 18, 2019) ("Plaintiff's Counsel [Biller & Kimble, LLC], having established an expertise in 'pizza delivery driver' litigation, have expended thousands of hours on similar cases which informed and enhanced their representation of Plaintiff here."). These skills and experience were necessary to achieve the settlement presented to the Court.

*The preclusion of employment by the attorney due to the acceptance of the case*. Plaintiffs' counsel was precluded from taking on other matters because of the substantial time and resources they had to dedicate to this case.

*The customary fee*. FLSA class and collective action attorneys' fees are typically paid as either a percentage of the settlement fund or based on counsel's lodestar. Since this fee request is based on counsel's lodestar, it is a customary fee. *Ellis*, 2023 U.S. Dist. LEXIS 20115, at *25-26.

*Whether the fee is fixed or contingent*. Plaintiffs' counsel's represents Plaintiff and the class/collective on a contingency fee basis. They have not been paid for their time worked on this case to date. They have also advanced substantial costs during that time period.

*Any time limitations imposed by the client or the circumstances*. Plaintiff did not create any time limitations for Plaintiff's counsel other than those that are typical of an attorney/client relationship.

*The amount involved and the results obtained*. As explained above, the settlement provides an excellent result for the class members under the circumstances. The unpaid wages at issue in the case, after evaluating Defendants' payroll and delivery records, likely range from $0 to $150,000. The drivers' claims are uncertain for a variety of reasons and there was a danger they would never be able to recover a judgment against Defendants, who no longer operate Toppers Pizza stores and claim to lack the funds to pay a judgment. As it stands, the class will receive $99,194.42, minus the incentive award and administrative expenses, which is approximately $956 per class member, on average. Under the circumstances, the settlement obtained is an excellent result. *See, e.g., Mars Steel Corp.*, 834 F.2d at 682 (finding a settlement of 10% of the total sought is adequate due to risks and costs of trial).

*The experience, reputation, and ability of the plaintiff's attorney*. As noted above with regard to the skill required, Plaintiffs' counsel are highly skilled in pizza delivery driver under-reimbursement cases. *See* Kimble Declaration, ¶ 14, 23.

*The "undesirability" of the case*. This case is not undesirable. While it is a relatively small dispute compared to other pizza delivery driver under-reimbursement cases, it is factually similar to other pizza delivery driver under-reimbursement claims Plaintiffs' counsel has previously represented.

*The nature and length of the professional relationship with the client*. Plaintiff's counsel's relationship with Plaintiff extends only to this case. Plaintiff retained Plaintiff's counsel to represent him and the classes he sought to represent on a contingency fee basis.

*Awards in similar cases*. The attorneys' fee award in this case is less than is typical in similar cases. *See, e.g., Young v. Rolling in the Dough, Inc.*, No. 1:17-cv-07825, 2020 U.S. Dist. LEXIS

19

35941, at *16 (N.D. Ill. Feb. 26, 2020) (approving attorneys' fees in settlement in pizza driver under-reimbursement case that more than counsel's lodestar amount). Plaintiff's counsel seeks substantially less than their lodestar amount to facilitate this settlement because the settlement will result in meaningful payments to the class members, which is significant in light of Defendants' representation that they do not have the funds to pay a judgment and are no longer an operating business.

Because the Settlement Agreement is not conditioned on an award of attorneys' fees, the Court need not make a final decision as to fees and costs now. *See* Ex. 1, § 4(C). Instead, Plaintiffs ask that the Court provisionally approve the fee award, subject to any objections from Class Members prior to final approval. Provisionally approving the fee award at this stage serves a useful function because the Class Members can be accurately informed in the notice as to what to expect with respect to attorneys' fees and costs.

Finally, Class Counsel seeks, and Defendants do not oppose, reimbursement of $12,345.22 in advanced litigation expenses, which will also be paid separately from the class members' award. These fees are based primarily on deposition costs, the sending of collective action and class action notice, costs for our data consultant to analyze Defendants' delivery records, and Plaintiffs' share of the mediation costs.

At the final fairness hearing, the Court will have a full record to be able to evaluate Class Counsel's request for fees and reimbursement of expenses.

### 7. The Incentive Payment is Reasonable

The settlement agreement allocates $10,000 as a service award to Plaintiff Jason Patzfahl. "Because a named plaintiff is an essential ingredient of any class action, an incentive award is

appropriate if it is necessary to induce an individual to participate in the suit." *See, e.g., Cook v. Niedert*, 142 F.3d 1004, 1006 (7th Cir. 1998). This is especially true in employment litigation. *See Velez v. Majik Cleaning Serv., Inc.*, 2007 U.S. Dist. LEXIS 46223, at *23 (S.D.N.Y. June 25, 2007) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers.").

In examining the reasonableness of a requested service award, courts consider: (1) the actions the plaintiff has taken to protect the interests of the class, (2) the degree to which the class has benefitted from those actions, and (3) the amount of time and effort the plaintiff expended in pursuing the litigation. *Cook*, 142 F.3 at 1016; *Bynum*, 2022 U.S. Dist. LEXIS 188785, at *10.

In this case, Plaintiff worked diligently to protect and advocate on behalf of the Class. He participated in pre-suit investigation, reviewed and contributed to documents filed with the court and/or exchanged with opposing counsel, assisted with damages calculations and with reviewing and verifying the data provided by Defendants, was deposed by Defendants, assisted counsel in preparation for depositions of other opt-in Plaintiffs and the Defendants, and attended the eight-hour mediation session. Kimble Declaration, ¶17. He has been active in each facet of the litigation. As a result, Defendants are willing to pay a substantial sum to satisfy the claims of the Class of delivery drivers. The incentive award to Plaintiff is reasonable. *Chesemore v. Alliance Holdings, Inc.*, 2014 U.S. Dist. LEXIS 123873, at *17-18 (stating "[a]s for appropriate amount, district courts in the Seventh Circuit have awarded incentive fee awards ranging from $5,000 to $25,000").[4]

---

[4] Courts routinely award $10,000 as a service award in pizza delivery driver under-reimbursement cases. *See, e.g., Young*, 2020 U.S. Dist. LEXIS 35941, at *16 (approving $10,000 service award in pizza delivery driver case); *Mullins*, 2019 U.S. Dist. LEXIS 11019, at *16 (approving $10,000

21

**8. The Administrative Expenses are reasonable.**

The parties have agreed to use CAC Services, LLC to administer the settlement. The cost of settlement administration will be deducted from the Settlement Fund before individual awards are calculated. The parties obtained estimates from three reputable claims administration companies and ultimately selected CAC. CAC estimates that it will cost approximately $5,996.81 to administer the settlement. These administrative costs are reasonable and should be approved.

**9. The *Cy Pres* Distribution of unclaimed funds is appropriate.**

Any unclaimed funds left in the Settlement fund will be given *cy pres* to the Greater Milwaukee Foundation Violence Prevention Fund. Courts have routinely allowed remaining amounts in a settlement fund to be distributed to a charity that benefits the class members. *Jimenez v. GLK Foods LLC*, No. 12-C-209, 2017 U.S. Dist. LEXIS 234135, at *9 (E.D. Wis. Sep. 18, 2017). This distribution is appropriate because (1) all the Defendants stores were located in the greater

---

service award in pizza delivery driver case); *Arledge*, 2018 U.S. Dist. LEXIS 179474, at *16 (approving $10,000 service award in pizza delivery driver case); *Arp v. Hohla & Wyss Ents., LLP*, No. 3:18-cv-119, 2020 U.S. Dist. LEXIS 207512, at *23 (S.D. Ohio Nov. 5, 2020) (approving $10,000 service award in pizza delivery driver case); *Estate of McConnell v. EUBA Corp.*, No. 3:18-cv-00355, 2021 U.S. Dist. LEXIS 92836, at *23 (S.D. Ohio May 17, 2021) (approving $10,000 service award in pizza delivery driver case); *Fox v. Team Goliath, Inc.*, No. 5:19-cv-195-JMH, 2021 U.S. Dist. LEXIS 262958, at *21 (E.D. Ky. Dec. 29, 2021) (approving $10,000 service award in pizza delivery driver case); *Chrisman v. Meadow Greens Pizza*, No. 5:19-cv-155-BO, 2020 U.S. Dist. LEXIS 119873, at *14 (E.D.N.C. July 7, 2020) (approving $10,000 service award in pizza delivery driver case); *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 U.S. Dist. LEXIS 204371, at *22 (S.D. Ohio Nov. 25, 2019) (approving $10,000 service award in pizza delivery driver case); *see also, e.g., Briggs v. PNC Financial Servs. Group, Inc.*, 2016 U.S. Dist. LEXIS 165560, at *5 (N.D. Ill. Nov. 29, 2016) (approving $12,500 in service award to two plaintiffs in FLSA settlement for a total of $25,000 in service awards); *Furman v. At Home Stores LLC*, 2017 U.S. Dist. LEXIS 73816, at *35-6 (awarding $10,000 service award); *Zolkos v. Scriptfleet, Inc.*, 2015 U.S. Dist. LEXIS 91699, at *8 (N.D. Ill. July 13, 2015) (awarding $10,000 to each of the Named Plaintiffs).

Milwaukee area, and (2) pizza delivery driver is one of the most dangerous jobs in the country.[5] Donating to the Greater Milwaukee Foundation Violence Prevention Fund benefits the class members because the fund facilitates a multidisciplinary, population-level approach to influence the social, behavioral, and environmental factors that contribute to violence in Milwaukee.[6] Violence prevention measures have the effect of making pizza delivery drivers' jobs safer.

**10. The Proposed Notice Conforms with Federal Law**

The proposed class notice meets the standards set forth in Rule 23(c)(2)(B). The notice, which will be provided by regular mail and electronic mail, clearly and accurately describes the nature of the action, the definition of the class certified, and the class claims and defenses. *See* Exhibit 1 to Settlement Agreement. The notice also informs class members that they may enter an appearance through counsel if the member so desires and explains the binding effect of the release. The notice provides putative class members with an opportunity to file objections to the settlement as required by Rule 23(e)(4)(A).

The Court should direct distribution of the class notice in the manner described in the Settlement Agreement. The Settlement Agreement envisions sending the Notice within approximately 28 days of the Court granting Preliminary Approval.

---

[5] Bureau of Labor Statistics, U.S. Department of Labor, The Economics Daily, Fatal injuries at a 5-year high for driver/sales workers in 2019 at https://www.bls.gov/opub/ted/2021/fatal-injuries-at-a-5-year-high-for-driver-sales-workers-in-2019.htm (noting that 16.9 percent of workplace deaths for delivery drivers resulted from intentional injuries by a person).
[6] https://www.greatermilwaukeefoundation.org/donors/give-online/violence-prevention-fund/

## 11. The Court Should Set a Hearing for Final Approval

Plaintiff requests that the Court set a hearing for final approval of the settlement to occur approximately 150 days after the Court grants preliminary approval of the proposed settlement. This date will allow a reasonable period for the class notices to be mailed and for class members to object or opt-out of the settlement but will not unduly delay the case's adjudication. In order to keep costs low, Plaintiff's counsel requests they be permitted to appear at the Final Approval hearing via telephone or videoconference.

The timeline envisioned for administration is as follows:

| Time | Event |
|---|---|
| Within 14 days of preliminary approval | Defendants provide Class Counsel and the Administrator with the final list of class members, their contact information, and relevant wage and reimbursement data. |
| Within 14 days after receiving the class list | The Administrator will send the notice to the class members. |
| Up to 60 days after mailing notices | Class members must opt-out or object to the settlement. |
| Within 45 days of the notice period deadline | Plaintiff will draft and file a motion for final approval. |
| Approximately 150 days after preliminary approval | The Court will hold a Final Fairness Hearing |
| Within 44 days of the Court's final approval Order | The Claims Administrator will distribute the first round of payments to Class Members and Class Counsel |
| Once per month for the year after the first payment | Defendants will pay the remainder of attorneys' fees and costs due to Class Counsel |

## 12. Conclusion

For the foregoing reasons, Plaintiff respectfully requests the Court to enter an Order (1) granting preliminary approval of the settlement; (2) provisionally approving Class Counsel's request for attorneys' fees and costs; (3) approving Plaintiff's service award; (4) approving the

administrative expenses, (5) directing distribution of the Class Notice to class members; and (6) setting the final fairness hearing date.

Respectfully submitted,

*/s/ Andrew Kimble*
Andrew R. Biller (Ohio Bar # 0081452)
Andrew P. Kimble (Ohio Bar # 0093172)
BILLER & KIMBLE, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 202-0710
Facsimile: (614) 340-4620
*abiller@billerkimble.com*
*akimble@billerkimble.com*

Scott S. Luzi, State Bar No. 1067405
WALCHESKE & LUZI, LLC
15850 W. Bluemound Road, Suite 304
Brookfield, Wisconsin 53005
Telephone: (262) 780-1953
Facsimile: (262) 565-6469
*sluzi@walcheskeluzi.com*

[www.billerkimble.com](www.billerkimble.com)

*Counsel for Plaintiff*

25

## <u>Certificate of Service</u>

The undersigned hereby certifies that a copy of the foregoing was served upon counsel for Defendants through the Court's ECF system.

<u>*/s/ Andrew Kimble*</u>
Andrew Kimble